**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN PAUL GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-cv-00605-CB |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| CITY OF PITTSBURGH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

Defendants' Motions to dismiss will be granted.  All of Plaintiff's claims fail for essentially the same reasons.

Plaintiff's claims emanate from events transpiring on October 1, 2019.  That day, his ex-wife attempted to enter the county courthouse with weapons, "including pepper spray, [brass] knuckles, a knife, and, upon [Plaintiff's information and belief,] a firearm."  Am. Compl. (Doc. 15) at ¶ 25.  "These weapons were discovered during courthouse screening," *id.*, and she "was arrested and initially charged with felony weapons violations."  *Id.* at ¶ 93.  Grievances regarding the 2025 criminal investigation and prosecution of his adult son aside, all of Plaintiff's claims relate to the 2019 incident.

Plaintiff indicates that, the same day, a state judge "issued [a] final PFA order" against his ex-wife, "including custody provisions favorable to [him]"; but, had his ex-wife's "arrest been disclosed" to Plaintiff, he "believe[s] the outcome would have further strengthened [his] custody rights."  *Id.* at ¶ 95.  Plaintiff contends Defendants violated his civil rights by: (a) failing to instantaneously have awareness of the temporary restraining order against his ex-wife, and (b) failing to notify Plaintiff that she possessed weapons and was arrested.

*See, e.g., id.* at ¶ 9 ("On October 1, 2019, [one Defendant] intentionally engaged in concealment of [the ex-wife's] weapons-related arrest[,] failed to enforce a standing PFA with custody provisions" and deliberately declined "to notify [Plaintiff] of this violation . . . to influence custody proceedings adversely against" him).

A common feature of conspiracy theories is that, when you think them through, their plausibility tends to fall apart. In this case, it seems fairly incredible to believe that the many Defendants were intimately familiar with Plaintiff, his ex-wife and their ongoing custody disputes—which, for years, had proceeded in Ohio (before and after Plaintiff's unsuccessful bids to transfer the proceedings to this District, *see* Order at Doc. 20); they knew that his ex-wife was the subject of a PFA; they arrested her for entering the courthouse with weapons, but determined they better not notify Plaintiff, lest he enjoy advantage at a hearing the same day; and they chose not to notify him, either by telephone, assuming Plaintiff was in possession of one and they knew the number; or by tracking him down, personally, at or before the hearing, the location of which they also knew.

The tendency to believe that the world revolves around oneself, and to overestimate the amount of time and energy others are devoting, is part of the human condition. An overabundance of this characteristic, however, crosses the line. So too, a tendency for discontent. Doc. 15 at ¶ 95 (the final PFA order was "favorable to [Plaintiff]").

At any rate, Plaintiff's claims hinge on his theory that one or more Defendants had "clear statutory duties under Pennsylvania law" to notify him regarding his ex-wife's violation of the PFA. Doc. 64 at 1. Plaintiff cites the "relief" section of the Commonwealth's Protection from Abuse Act. 23 Pa. Cons. Stat. § 6108. His pleadings reference Section 6108(a)(5),

Doc. 15 at ¶ 41, and his opposition brief, Section 6108(a)(7).  Doc. 64 at 9.  These provisions do not say what Plaintiff thinks they say.

Placing aside the implausibility of Defendants having the ability to immediately notify him of his ex-wife's possession of weapons and arrest, Plaintiff has failed to identify *any* legal authority supporting his contention that Defendants violated his constitutional rights in not doing so.  Nor has he plausibly alleged compensable harm, or any legal authority recognizing a right of recovery.  *See* discussions *supra*.  His belief that notifying the judge of his ex-wife's incident "would have further strengthened [his] custody rights" is entirely speculative and – frankly – seems like mere "piling on."  Regardless, there are no case decisions or legal precepts supporting recovery here.

Plaintiff's beliefs to the contrary flow from his misreading of the statute.  Section 6108(a)(5) addresses matters of financial support, and his reference to it likely was in error.  Section 6108(a)(7) addresses disarming a defendant under a PFA.  It mostly addresses firearms, but allows the state court to "order the defendant to relinquish . . . other weapons or ammunition *that have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children*."  *Id.* (emphasis added).  The court order "shall contain a list of any firearm, other weapon or ammunition ordered relinquished."  *Id.*, § 6108(a)(7)(ii).  Procedures for relinquishment are detailed, and, if a defendant does not follow them, "the sheriff or the appropriate law enforcement agency shall, at a minimum, provide immediate notice to the court, the plaintiff and appropriate law enforcement agencies, as appropriate."  § 6108(a)(7)(iv); *see also* 6108(a)(7)(i)(B).  This is the only legal "support" for Plaintiff's grievances.  *See, e.g.*, Doc. 64 at 3.

Plaintiff declares that the statute (1) "required law enforcement to notify both [him] and the Court of any violations" of the PFA; (2) the "notice requirement is not discretionary"; and (3) "[i]t exists to protect victims and ensure courts have complete information when children are involved." *Id.* Few would argue with the third assertion, as a general matter. But the first two propositions are not true because Plaintiff says so.

At the 12(b)(6) stage, the Court is required to accept as true a plaintiff's factual averments (subject to some exceptions, which need not be addressed here). Legal conclusions, not so. The statute does not establish a general duty, by any and all law enforcement officers, to notify the PFA-plaintiff of "any violations" of the PFA. And the notice requirement that is imposed applies only "as appropriate." *See* statute, quoted above.

As almost everywhere else, where Plaintiff sees a mountain, there is not even a molehill. The statute requires law enforcement, as specifically defined therein, to report to the court and the plaintiff that the defendant has not relinquished weapons specifically identified in the court order. Even assuming his ex-wife had a firearm (a contention not well supported in the record), no specific firearm was identified in the order, *see* Doc. 40-2; nor did she fail to relinquish a specific weapon pursuant to the statute's carefully outlined procedures. Rather, she was disarmed of unspecified "weapons" upon entering a courthouse. The statute does not apply.

At bottom, there is no legal support for Plaintiff's contention that his rights were violated in any way. There is no support for his suggestion that the episode resulted in legally-compensable harm. Rather, his "discovery" of the incident, allegedly when his ex-wife told him about it over five years later, is mere fodder for his ongoing crusade regarding child custody

4

disputes[1] that have been, essentially, moot since 2021 (for his daughter) and 2023 (for his son). Those were the years, respectively, that his children reached majority. Since then, his children have been adults in the eyes of the law.

Plaintiff appears to concede that his son's 2025 criminal investigation and charges cannot be redressed here. Doc. 64 at 6 ("I do not represent my son nor assert claims on his behalf."). Rather, Plaintiff's "reference to his [son's] case illustrates the pattern of misconduct and retaliation that began when he was a child under my care." *Id.* This contention, along with his varied other conspiratorial musings, do not support any claim. It simply is not plausible that every law enforcement agent in the Commonwealth with whom Plaintiff is displeased is secretly participating in a grand conspiracy to persecute Plaintiff, and his offspring. There are no plausible allegations from which it may be inferred that *any* law enforcement agent in the Commonwealth was sufficiently aware of Plaintiff, or his troubles, to support a plausible inference of persecution. Not in 2019, not in 2025 and not now.

If all of this were not enough, Plaintiff's claims are time barred. He relies on the discovery rule, suggesting that his clock only began to run when, in July 2024, his ex-wife "herself" disclosed "the October 2019 arrest" to him. Doc. 15 at ¶ 101. Tolling applies only in "exceptional circumstances," where a plaintiff "in some extraordinary way has been prevented from asserting his . . . rights." Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000) (citation to quoted and other sources, here and hereafter, omitted). Here, there are none.

---

[1] *See* Doc. 64 at 5 (identifying but a few of the ongoing legal cases in which Plaintiff persists, although the denial of certiorari he cites effectively ended that litigation). Plaintiff has been declared a vexatious litigant in multiple fora, but this Court does not rely on or endorse those determinations here. Should he file additional lawsuits in this District regarding the same or related topics, however, "all bets are off."

His ex-wife could have told him she was arrested in 2019, in 2024, in 2030 or later. The law cannot be that Plaintiff's statute of limitations would extend indefinitely until, by happenstance, his ex-wife saw fit to mention it.  She is not a defendant in this case, and Plaintiff's lack of prior knowledge can, in no plausible way, be tied to anything a Defendant did or did not do.  The Court already has rejected Plaintiff's grand conspiracies, and any protestations he may have would be more of the same.  He is not eligible for tolling,[2] and his claims are time-barred.

Plaintiff's two main linchpins, his underlying grievance and his tolling argument, quickly fall apart under the law.  They cannot be cured by amendment.  All of the federal claims are subject to dismissal, and the Court "*must* decline to decide pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original).  There is no such justification, and the Court declines to exercise supplemental jurisdiction over his single state claim.

Defendants' Motions (**Docs. 40, 54 and 59**) to dismiss are **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**.

---

[2]  Plaintiff's lack of legally compensable injury disrupts the standard analyses.  The Court cannot say that he lacked diligence or knew or should have known that he was harmed at the hands of another.  Rather, his ex-wife's mentioning her arrest, five years after the fact, does not show that Plaintiff was treated "unfair[ly] because a defendant concealed its wrong and prevented a . . . claim within the limitations period."  Cunningham v. M&T Bank Corp., 814 F.3d 156, 164 (3d Cir. 2016); *accord* Johnson v. Hendricks, 314 F.3d 159, 162-63 (refusing to apply equitable tolling "based upon the conduct of a third party"); Kreiger v. U. S., 539 F.2d 317, 321 (3d Cir. 1976) (no tolling where "[t]he fraudulent concealment" of which plaintiffs complained "[was] that of a stranger to the cause of action, . . . in no way be attributed to the defendant").  Here, the injustices *prevented* by statutes of limitation, "surprise[] through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared," are significantly more acute.  Cunningham at 164.

IT IS SO ORDERED.


March 31, 2026                                        s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     Chief United States District Judge


cc (via ECF email notification):

All Counsel of Record

John Paul Gomez (ECF-registered)